Guy MOON, Jr. *v.* Virginia MOON

78-307                                         578 S.W. 2d 203

Opinion delivered March 19, 1979
(Division II)

*Arnold, Hamilton & Streetman,* for appellant.

*Bart Mullis,* for appellee.

JOHN A. FOGLEMAN, Justice. Appellant contends that an order of the chancery court awarding his wife, appellee here, temporary alimony and attorney's fees should be reversed because of lack of jurisdiction of the parties and the subject matter. The question of jurisdiction was raised by appellant's motion, on special appearance, to dismiss appellee's suit for divorce filed in the Chancery Court of Jefferson County. After an evidentiary hearing on the motion, the chancellor denied it and granted appellee temporary alimony and attorney's fees. Since we are unable to say that the chancellor's holding was clearly against the preponderance of the evidence, we affirm.

In his motion, appellant alleged that the parties had lived continuously in Chicot County for a period of ten years, that they had never resided in Jefferson County and that appellee was not, at the time of filing her complaint, a bona fide resident of Jefferson County.

At the outset, we point out that one questioning the jurisdiction of the court by motion to dismiss bears the burden of proving the pertinent facts whenever the disposition of the motion depends upon the introduction of testimony. *Running* v. *Southwest Freight Lines, Inc.*, 227 Ark. 839, 303 S.W. 2d 578; *Arkansas Land & Cattle Co.* v. *Anderson-Tully Co.*, 248 Ark. 495, 452 S.W. 2d 632; *Nix* v. *Dunavent*, 249 Ark. 641, 460 S.W. 2d 762; *Williams* v. *Edmondson*, 257 Ark. 837, 520 S.W. 2d 260; *Hawes Firearms Co.* v. *Roberts*, 263 Ark. 510, 565 S.W. 2d 620.

Virginia Moon testified that she resided at Sherill with her niece Debbie Chaddick. Other relevant testimony by her may be summarized as follows:

I came to Pine Bluff about July 21 or 22 because I had a family here and needed a place to live. I was quite upset and I just came to stay with my niece for a few days. I intend to stay in Pine Bluff. I want to reside here. I want to send my two younger children to school here. I have checked on obtaining an apartment but did not have the necessary money to make a deposit. I have checked on employment and financial aid to go to school, because I have been out of school for 20 years and I have never worked. It was my intention when I came to Jefferson County to reside here and continue to do so, no matter what's done in regard to the divorce. I could have filed for divorce in Chicot County, but where would I have found employment, a school to attend or a place to live? Before coming here, I had never lived in Jefferson County. My mother lives in Chicot County and I have a sister who is living in Chicot County, but is moving to Ashley County. After I separated from my husband in June, I went to stay with my mother in Chicot County. After she, my aunt and I went to California for a few days, we returned about July 19th and I spent a Friday, Saturday, Sunday and Monday with Mr. Moon and the children. We all went to church together on July 23. I left on July 26, or approximately that date. I had only been in Pine Bluff two days when I filed for this divorce. In the last two years, I have filed three other divorce actions against Mr. Moon in Chicot

County. Each one of them was dismissed and I went back to my husband. When I returned from California, my husband took the keys for my 1977 Cadillac away from me and jacked the car up and drained the oil out of it, so I could not use it. Either the day after my husband put black and blue marks on me, or the following day, I grabbed up the keys to a pickup truck and got out of there. I did not bring any clothes, furniture or other personal belongings with me, because if he had seen me packing, there would have been another fight. It is my intention to get my belongings and bring them to Jefferson County.

This suit was filed on July 28, 1978. It was verified before a notary public in Lincoln County. It is clear that these parties had resided in Chicot County during all the ten years of their marriage. Appellant testified that he did not physically abuse his wife on the day she said that he did and that he was only trying to protect himself from appellee's assault. He said that her relatives in Jefferson County hadn't lived there very long. He stated that he couldn't read appellee's mind and didn't know what she was going to do when she left.

We have held that the venue requirement in Ark. Stat. Ann. § 34-1204 (Repl. 1962) means that a divorce proceeding must be in the county of the plaintiff's domicile. *Smith v. Smith,* 219 Ark. 876, 245 S.W. 2d 207. No particular length of time is required for the establishment of a domicile, but there must be residence attended by such circumstances surrounding its acquirement as to manifest a bona fide intention of making it a fixed and permanent place of abode. *Smith v. Smith,* supra; *McLaughlin v. McLaughlin,* 193 Ark. 207, 99 S.W. 2d 571.

We have long recognized, in divorce cases, that one has the absolute and unqualified right to change his place of abode when he pleases, for any reason which prompts him to do so; and that he does change his place of abode when he removes himself from one place, with the intention of abandoning it as his place of abode, to another, where he expects to abide, without having the intention of returning to the place from which he removed and that his intent is controlling.

*Hillman* v. *Hillman,* 200 Ark. 340, 138 S.W. 2d 1051. A move which is not made with the intention, in good faith, to become a resident of the new place of abode is not sufficient to establish a domicile. *Hillman* v. *Hillman,* supra. In both *McLaughlin* and *Hillman,* we said the evidence was not sufficient to show an intention on the part of the plaintiff to permanently reside in the county chosen as a forum. *Smith* v. *Smith,* supra.

The question in this case resolves itself into an inquiry into the existence of a bona fide intention on the part of appellee. See *Feldman* v. *Feldman,* 205 Ark. 544, 169 S.W. 2d 866. The fact that Mrs. Moon had never before resided in Jefferson County is significant only because a previous residence there would have tended to support her declared intention. The brevity of her residence, of course, was relevant to her intention, but not controlling, in view of the fact that no particular length of time is required for the establishment of a domicile.

Appellant places his principal reliance upon *McLaughlin* v. *McLaughlin,* supra. There is quite a distinction between this case and that. In *McLaughlin,* the plaintiff wife testified that she left the county of marital domicile (Garland) and went to Little Rock for the purpose of bringing suit for divorce. This was the factor upon which this court's decision that she had not established a domicile in Pulaski County turned. *Feldman* v. *Feldman,* supra. See also, *Allen* v. *Allen,* 211 Ark. 335, 200 S.W. 2d 324, where we said that the plaintiff's testimony that he came to the county where the suit was filed largely destroyed other evidence indicating that he had established a domicile. Mrs. McLaughlin's declared intention was supported by the fact that she left her clothing and personal effects in a hotel room she had occupied *separately* from her husband in Garland County, with a special door lock, the key to which she retained. She did not remove these effects from the hotel room until nearly two weeks after her divorce suit was filed. Unlike this case, no particular reason was given for leaving these personal effects in her previous residence.

Appellee gave a reason for not having brought her personal effects to Jefferson County and for not having obtained

an apartment or separate dwelling place. She gave reasons for going to Jefferson County rather than remaining in Chicot County. Her testimony was the only testimony on most of the critical facts. The question of her good faith is largely one of her credibility. Insofar as credibility is concerned, we must defer to the superior position of the chancellor who saw and heard her testify. In a case such as this, the chancellor's finding is persuasive. *Smith* v. *Smith,* supra. We cannot say that it was against the preponderance of the evidence.

The chancery court's order is affirmed.

We agree. HOLT, HICKMAN and PURTLE, JJ.